UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| OTONIEL GOMEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:24-cv-00709-JSD |
| ) | |
| CITY OF ST. LOUIS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Amended Complaint of self-represented Plaintiff Otoniel Gomez. ECF No. 7. The Court previously granted Plaintiff *in forma pauperis* status[1] and reviewed his original § 1983 complaint under 28 U.S.C. § 1915. ECF No. 6. Based on that review, the Court directed Plaintiff to amend his complaint on a Court-provided form and in compliance with the Court's instructions. The Court warned Plaintiff that his amended pleading would also be reviewed under § 1915. For the reasons discussed below, the Court will dismiss this case for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2).

**Background**

When Plaintiff filed this case in May 2024, he was a pretrial detainee being held at the St. Louis City Justice Center (SLCJC). ECF No. 1 at 1. Independent review of Plaintiff's criminal record on Missouri CaseNet shows that, in October 2024, Plaintiff was found guilty of second-degree rape, two counts of third-degree assault, and third-degree kidnapping.[2] *State v. Gomez*, No.

---

[1] When granting Plaintiff *in forma pauperis* status, the Court assessed an initial partial filing fee of $1.00. *See* ECF No. 6 at 1-2. In "Supplement 3" of his Amended Complaint, Plaintiff states that he doesn't know how to pay this amount but that the Court can take the money out of his commissary account. ECF No. 7 at 16. Plaintiff should request payment be made from his prison account and send it to the Court as directed at the end of the Court's prior order. *See* ECF No. 6 at p. 15.

[2] The Court takes judicial notice of these public state records. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district courts may take judicial notice of public state records).

2322-CR00261-01 (22nd Jud. Cir., filed Apr. 25, 2023). Plaintiff is scheduled for sentencing on these charges in February 2025. *Id.*

In December 2023, before Plaintiff initiated this § 1983 action, he filed a different civil rights action under 42 U.S.C. § 1983 against multiple defendants associated with SLCJC, including the only named defendant in the amended complaint, Steve Brock. *See Gomez v. City of St. Louis*, No. 4:23-cv-1718-JSD (E.D. Mo. filed Dec. 26, 2023).[3] In that § 1983 action, Plaintiff alleged that SLCJC defendants were negligent in their duty to keep him safe from assault by fellow inmates, based on an incident in September 2023 when Plaintiff suffered a broken nose, broken occipital bone, shoulder damage, headaches, sleeping problems, and partial face numbness. *Id.* at ECF No. 1. For relief, Plaintiff requested money damages and a housing assignment without constant lighting, which gave him headaches. *Id.* On June 14, 2024, the Court dismissed the case under 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim upon which relief could be granted.[4] *Id.* at ECF Nos. 7-8.

However, before that case was dismissed, Plaintiff initiated this case in May 2024 with a Complaint that also alleged a failure-to-protect claim under § 1983. *See* ECF No. 1. Plaintiff's Complaint named seven (7) defendants associated with SLCJC, in their official capacities only. *Id.* In an Order issued September 4, 2024, the Court found multiple deficiencies on review of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2). *See* ECF No. 6. But, because Plaintiff is self-represented and he presented serious allegations to the Court, he was directed to file an amended

---

[3] On Plaintiff's Original Filing Form submitted with his Complaint in this action, he states that this case is "related, but is not substantially equivalent" to the § 1983 action that he filed in December 2023. *See* ECF No. 1-3.

[4] Plaintiff states on the Amended Complaint filed in this matter that he has had a case dismissed on the basis of the "three strikes rule" and he cites to this prior-filed § 1983 case and a § 2241 habeas action. ECF No. 7 at 13. However, based on an independent review of federal court records, the Court concludes that Plaintiff is not subject to the filing restrictions of the three strikes rule, 28 U.S.C. § 1915(g).

complaint in an attempt to cure the pleading deficiencies. Plaintiff was warned that his Amended Complaint would also be reviewed under 28 U.S.C. § 1915.

### The Amended Complaint

Plaintiff's Amended § 1983 Complaint names only one defendant in both his individual and official capacities: Steve Brock, a protective custody unit manager at SLCJC. ECF No. 7 at 1-2. Plaintiff alleges that Brock violated his Eighth Amendment rights by failing to keep him "safe from other inmates … through both direct actions and failure to supervise" and violated his Fifth Amendment due process rights when Brock transferred Plaintiff "to administrative segregation following [an] April 6th 2023 incident." *Id.* at 3.

The factual allegations stated in support of these legal claims are difficult to decipher as Plaintiff jumps to different points in time and makes conflicting statements. As best as the Court can discern, the facts are as follows.[5] After receiving death threats from General Population (GP) inmates, Plaintiff was transferred to a protective custody (PC) unit in March 2023. *Id.* at 4. In April 2023, Plaintiff verbally requested a cellmate change because Plaintiff's then-current cellmate Tisdale "refused to shower and maintain cleanliness in [their] cell." *Id.* Plaintiff was told to make the request to his caseworker in writing, which he did the next day. The day after the written request, on April 6th, Plaintiff and Tisdale had a "verbal altercation" and Tisdale punched Plaintiff. Plaintiff states no injuries resulting from this incident, nor does it appear that he sought or needed medical attention. However, multiple SLCJC employees came to the cell in response to the altercation, including defendant Brock. Tisdale asked to be removed from the cell, but no cell changes were made. The next morning, Plaintiff requested a cell transfer, and he was immediately moved. Later that day, Plaintiff was moved again, but this time to the administrative segregation

---

[5] Most of the incidents Plaintiff describes involved other SLCJC employees and not Brock. Where an event or accusation implicates Brock, he is identified by name.

unit where he was held for approximately six days.  When Plaintiff asked why he was moved there, a caseworker told him that it was because "Brock got involved."  *Id.*

Plaintiff states that, in June 2023, "Brock made PC inmates sign waivers to be able to go on recreation with other PC inmates totaling 4 cells at a time."  *Id.*  According to Plaintiff, prior to these waivers, recreation time in the PC unit was for one hour every three days, releasing one cell at a time.  Although Plaintiff states that Brock "made" inmates sign these waivers, he also states that another SLCJC employee told him that this "was 'up to Brock'" and that it was Brock who "asked [inmates] to sign waivers."  *Id.*  It is unclear how Plaintiff feels that Brock "made" him sign the waiver given that it does appear that Brock is the one who brought him the waiver for signature, and Brock did not threaten Plaintiff with repercussions if he refused to sign.  However, later in the Amended Complaint, Plaintiff states that, upon signing these waivers, "Brock threatened all PC inmates that if they fought each other they would spend the rest 'of [their] time in 4B'"—the administrative segregation unit.  *Id.* at 6.  As fighting is not permitted in jail, it is unclear how this statement is directly related to the signing of the waivers.

After this June 2023 change in the number of cells that were open for recreation time together, Plaintiff alleges that Brock "refused to adhere to protocols" keeping PC and GP inmates separated.  *Id.* at 4-5.  From what the Court can discern from the allegations, Plaintiff's unit at SLCJC contained a combination of both PC and GP cells.  Plaintiff asserts that the GP cells "constantly harass[ed] and threaten[ed] PC inmates."  *Id.* at 5.  Plaintiff further alleges that "Brock allowed GP inmate 'workers' to routinely be in [the] day-room co-mingling" and that Brock "fail[ed] to take reasonable steps to protect" Plaintiff because Plaintiff had to "risk serious bodily harm in order to simply talk to family or use a tablet or stay clean" during his recreation time.  *Id.*

In early September 2023, Plaintiff was verbally harassed by a GP inmate named Bell while on recreation time.  *Id.* at 5.  Plaintiff states that Bell had been on lockdown two to three times

- 4 -

before then for showing hostility to COs. *Id.* at 19. According to Plaintiff, there was a new correctional officer (CO) on duty in the unit that day, and the television in their area had not been working for the last two weeks so "everyone was at each others throats." *Id.* at 19. After Bell threatened Plaintiff, Plaintiff returned to his cell and reported the verbal threats over the intercom. Bell continued to threaten Plaintiff while he showered and after he returned to his cell. *Id.* at 6. Plaintiff eventually closed his cell door on Bell. At some point later that day, Bell physically assaulted Plaintiff when Plaintiff was making a phone call, resulting in multiple injuries (broken nose and occipital bones, nerve pain, headaches, and shoulder pain), an overnight hospital stay, and two subsequent surgeries. *Id.* at 4 & 6. Bell received a two-week lockdown for the assault. However, a few months after this incident, Bell was appointed "dorm 'rep'," resulting in Plaintiff being "exposed" to him almost daily during recreation time. *Id.* at 6 & 18.

Plaintiff argues that "it shows callous disregard of inmates that this incident was allowed to occur given the volatility apparent in PC to GP interactions and the documented problems with the door locks in the city justice center." *Id.* at 17. Plaintiff does not plead any other allegations regarding broken door locks. In addition, although the CO on duty that day was new and Plaintiff asserts that "she didn't have to let anyone on rec" given the increased tension in the unit from the lack of television, Plaintiff does not blame the new CO but instead blames defendant Brock, who "established and enforced" the "protocol" that was supposed to protect him. *Id.* at 19.

The third incident described in the Amended Complaint involves an inmate named Foster. From at least June 2023 through November 2023, Plaintiff and Foster were cellmates in PC. *Id.* at 6-7. However, around November 21, 2023, Foster was moved into the cell next to Plaintiff. *Id.* at 7. Soon after, Plaintiff was put in "lockdown" for two weeks because Foster reported that Plaintiff was drawing on the cell wall. Plaintiff states that Foster fought with two other inmates at the end of December 2023, which made him want "to prove he was a tough guy and beat [Plaintiff]

up." *Id.* at 19. As such, Foster started harassing Plaintiff by doing things like stealing his food from the microwave and locking his cell during recreation time. Plaintiff states that he subsequently filed grievances about Foster stealing his personal items and declared Foster as an "enemy" by early January 2024. *Id.* Plaintiff alleges that, in February 2024, defendant Brock yelled at him "in front of the whole pod to 'quit whining' or he was going to put [Plaintiff] on GP as punishment," because Plaintiff did not want to leave his cell to go get a haircut with inmate Foster. *Id.* at 9 & 17.

By early March 2024, Plaintiff asserts, "Brock knew Foster was [his] enemy" and had "refused repeated requests" for either of them to be moved to different cells (when they were in adjacent cells). *Id.* at 6. On March 2nd, Plaintiff and Foster were on recreation time together when Foster grabbed some of Plaintiff's drawings from another inmate and stuffed them down his pants. *Id.* at 7. When Plaintiff approached Foster to ask for the drawings, Foster punched him and they "fought." Plaintiff suffered cuts on his face and a chipped tooth from this fight. *Id.* at 4 & 7. There is no indication that he needed or sought medical attention.

Plaintiff attached a "Supplement 2" which appears to be a rewriting or summary of two of the grievances he filed in January 2024. *Id.* at 10-11. In this first grievance, dated January 2, Plaintiff warned that Foster had threatened him "to save face," and that Foster was a "problem" that was "escalating." The grievance response told Plaintiff to identify enemy inmates so "they are kept separate," but it also informed him that the jail "cannot prevent other residents from threatening [him]," they can "only keep them from being housed" and having recreation time with him. *Id.* at 10. In the second grievance, dated January 24, Plaintiff requested to be moved or put on "restricted rec" because Foster and a GP inmate worker were "conspiring" to get Plaintiff "beat up." *Id.* Plaintiff asked to put Foster and the GP inmate on his enemy list, and he stated that even though he had asked not to be on recreation time with them, it had "happened almost every day

this week." *Id.* at 11. The grievance response informed Plaintiff that if he did not feel safe where he is housed, he could be moved "across the hall to 4Bravo"—the administrative segregation unit." *Id.*

In Plaintiff's "Supplement 4" to his Amended Complaint, Plaintiff explains how one specific CO named Moton "was the only person who kept" Plaintiff and Foster separated during recreation time between December 5, 2023, and March 2, 2024. *Id.* at 17. Plaintiff explains that Moton "verified" that it was in Plaintiff's "journal" that he was "not [to] have rec with Foster." As a result, Moton always kept him separated from Foster, even if it meant giving Plaintiff recreation by himself. However, Plaintiff argues that despite this "documented" separation need, it was "unenforced or ignored by Brock." *Id.* at 17-18.

As relates to defendant Brock's knowledge and responsibility for these incidents, Plaintiff admits that he does not "know to what extent the hierarchy of the CJC extends to unit manager Brock as he is neither a CO or Lt or captain. But it is absolutely clear [that] PC inmates were his responsibility and all decisions whether presented to COs or caseworker [] had to be conferred with Brock." *Id.* at 18. As for grievance filings generally, Plaintiff alleges that a caseworker told him that "Ms Ross" reads all the grievances, so Plaintiff reasons that since "Ms Ross" is the "deputy Commissioner above Brock," then Brock "had to know" about all the grievances Plaintiff had filed. *Id.* at 7.

Finally, for relief, Plaintiff seeks 3.7 million dollars in damages for "living in constant … fear," for "potential permanent vision problems due to light sensitivity," poor quality of life due to "horrible snoring," shoulder pain, headaches, and scarring. *Id.* at 8.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim upon which relief can be granted, or

seeks monetary relief against a defendant who is immune from such relief. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

**Discussion**

Plaintiff's Amended Complaint appears to assert three legal claims against defendant Brock in both his individual and official capacities: (1) an Eighth Amendment failure-to-protect violation through his "direct actions;" (2) an Eighth Amendment failure-to-protect violation through his failure to supervise; and (3) a Fifth Amendment due process violation based on

Plaintiff's transfer to administrative segregation in April 2023.  ECF No. 7 at 3.  Having carefully reviewed and liberally construed Plaintiff's pleadings, the Court will dismiss all of Plaintiff's claims for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B).

### I. Official Capacity Claims

As discussed in the Court's previous Order, an official capacity claim against an individual is actually "against the governmental entity itself."  *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017).  Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer."  *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer").

In this case, defendant Brock is an employee at the SLCJC, hence his employer is the City of St. Louis.  In order to prevail on an official capacity claim against Brock, Plaintiff must establish the City's liability for the alleged conduct.  *See Kelly*, 813 F.3d at 1075.  Municipal liability under § 1983 may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

In this case, Plaintiff has not alleged any constitutional violations arising from an official policy, an unofficial custom, or a failure to train or supervise on the part of the City.  Thus, Plaintiff cannot establish that the City is liable for any allegedly unconstitutional conduct, and the official capacity claims against Brock must be dismissed.

## II. Failure to Protect Claim

As a pretrial detainee, Plaintiff's constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). "The Constitution affords greater protection to a pretrial detainee compared to a convicted inmate in the sense that '[d]ue process requires that a pretrial detainee not be punished.'" *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). However, this distinction "makes little difference as a practical matter," because the same standard is applied. *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007) ("Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment.").

The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). As such, prison officials must take reasonable measures to guarantee inmate safety and protect prisoners from violence by other inmates. *Berry v. Sherman*, 365 F.3d 631, 633-34 (8th Cir. 2004) (citing *Farmer*, 511 U.S. at 832-33). There are limitations to this guarantee, however, as "prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotations and citation omitted).

"As prisons are inherently dangerous environments," not every injury suffered by a prisoner at the hands of another inmate, is grounds for constitutional liability. *Vandevender v. Sass*, 970 F.3d 972, 976 (8th Cir. 2020) (citing *Farmer*, 511 U.S. at 834). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir. 2000).

### a. September 2023 Incident: Assault by GP Inmate Bell

As discussed above, this is not the first § 1983 action that Plaintiff has filed in this Court concerning the September 2023 assault by inmate Bell. *See Gomez v. City of St. Louis*, No. 4:23-cv-1718-JSD (E.D. Mo. filed Dec. 26, 2023). Plaintiff's signed and sworn Complaint from his prior suit contained relevant facts about the incident that were not included in the pleadings filed in this matter. The Court takes judicial notice of this record. *See Cravens v. Smith*, 610 F.3d 1019, 1029 (8th Cir. 2010). Most importantly is that fact that, when inmate Bell attacked Plaintiff, it was after inmate Bell had broken out of his cell. *Gomez*, No. 4:23-cv-1718-JSD, ECF No. 1 at 5 (alleging that "the inmate in cell 15 broke out of his cell, went to cell 14 broke him out of his cell and cell 14 had enough time [to] punch me at least 6 times breaking the bones in my face and damaging my shoulder"). As such, Plaintiff and Bell were not intentionally on recreation time together at the time of the incident.

Like the dismissal of Plaintiff's failure-to-protect claim in his prior § 1983 case, Plaintiff has not alleged facts permitting an inference that Brock was deliberately indifferent in his actions (or lack of action). *See id.* at ECF No. 7 at 6-9 (dismissing failure-to-protect claim for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2)(B)). "An official is deliberately indifferent only if he actually knows of the substantial risk and fails to respond reasonably to it." *Hodges v. Dep't of Corr.*, 61 F.4th 588, 592 (8th Cir. 2023) (citing *Farmer*, 511 U.S. at 844-45).

Here, assuming (without deciding) that Bell was an excessive risk to Plaintiff's safety, the factual allegations do not suggest that defendant Brock actually knew about this risk and failed to respond. Based on the pleadings, Plaintiff and Bell had no issues with each other until the day of the attack. There is no evidence that Brock knew that Bell had threatened Plaintiff earlier that day. Furthermore, Plaintiff alleges that Bell attacked him after another inmate helped Bell break out of

- 11 -

his cell. Thus, Plaintiff and Bell were not meant to be out of their cells at the same recreation time. Plaintiff has not alleged that Brock was aware, or reasonably should have been aware, that Bell planned to break out and injure Plaintiff. Nor does Plaintiff allege that Brock knew Bell had broken out of his cell and Brock did nothing in response. Neither the new CO who heard Bell's threats nor Brock himself could have known that Plaintiff was at risk, as Bell was supposed to be locked in his cell at the time of the attack. Plaintiff has failed to allege the subjective component of his failure-to-protect claim because the facts do not indicate that Brock deliberately disregarded a known risk to Plaintiff's safety. *See Hodges*, 61 F.4th at 592-93. Therefore, Plaintiff's failure-to-protect claim against Brock in his individual capacity, regarding the September 2023 attack, will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

b. **March 2024 Incident: Assault by former cellmate Foster**

Plaintiff and Foster were both PC inmates and were cellmates for at least five months until Foster was moved to the adjacent cell, after which Plaintiff added Foster to his enemy list. There are conflicting allegations as to when Foster was added to the list (January 2nd or January 24th), but Foster clearly was on Plaintiff's enemy list by the March 2024 incident. *See* ECF No. 7 at 7 & 10. Plaintiff states that it was "documented" in his "journal" that he and Foster were not to be on recreation time together. *Id.* at 17-18. CO Moton "verified" this documentation and kept Plaintiff separated from Foster from December 5, 2023, to March 2, 2024, even if it meant giving Plaintiff recreation time by himself. *Id.* Then one day in early March 2024, Plaintiff and Foster were on recreation time together and a fight ensued, resulting in cuts to Plaintiff's face and a chipped tooth.

Plaintiff alleges that Brock knew that Foster was his enemy and that Brock denied multiple requests for Plaintiff or Foster to move to a different cell (presumably to be farther apart because

they were not celled together). These allegations alone fail to state a claim for relief because a prisoner-plaintiff has no constitutional right to his choice of cell. *Lyon v. Farrier*, 727 F.2d 766, 768 (8th Cir. 1984) ("Among the liberties which prisoners do not enjoy is choice of cells.").

Plaintiff also alleges that Brock knew about the need to separate Plaintiff and Foster but that he ignored it and/or failed to enforce it. Assuming that Foster being on Plaintiff's enemy list is enough to establish that Foster was a known risk to Plaintiff's safety, the question becomes whether Brock deliberately disregarded this risk to Plaintiff. The pleadings suggest the opposite. Plaintiff states that it was documented and verified that he was not to be on recreation time with Foster. Plaintiff also alleges that the PC unit Brock's responsibility and that all decisions regarding the unit went through him. Based on these statements, Brock must have known about and authorized CO Moton's efforts to separate Plaintiff and Foster for recreation time between December 2023 and March 2024. These facts do not suggest that Brock ignored or failed to enforce the separation of these inmates.

Given the documented need to segregate Plaintiff and Foster, it is unclear why they were on recreation time together in early March 2024. However, the Complaint lacks factual allegations suggesting that Brock deliberately disregarded the need to keep them apart, resulting in the fight. The factual pleadings do not support Plaintiff's conclusory statements that Brock ignored and failed to enforce the separation. Although self-represented complaints must be liberally construed, *Erickson*, 551 U.S. at 94, nevertheless, such pleadings cannot be conclusory, and must set forth facts that, taken as true, state a claim as a matter of law. *Johnson v. Stark*, 717 F.2d 1550, 1552 (8th Cir. 1983). A court will not supply additional facts or create a legal theory assuming facts that have not been pleaded. *Stone*, 364 F.3d at 914. And the Court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir.

2002). To state a plausible cause of action, "[a] pleading that merely pleads … naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010).

In this case, nothing in Plaintiff's pleadings suggests that his altercation in March 2024 with inmate Foster was a result of defendant Brock's deliberate indifference. As such, Plaintiff's failure-to-protect claim against Brock in his individual capacity, regarding the March 2024 attack, will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

### III. Failure to Supervise Claim

"A supervisor may not be held liable under § 1983 for the constitutional violations of a subordinate on a respondeat superior theory." *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001) (*citing Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995)). "Government officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (internal citations omitted). "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights. *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985). As discussed above, Plaintiff has failed to plead facts to support the claim that defendant Brock is directly responsible for a failure to protect him, regarding both the September 2023 and March 2024 altercations.

However, a plaintiff may, under a theory of direct liability, maintain a civil rights claim against a prison official whose failure to train, supervise, direct, or control actions of a subordinate is such that it constitutes deliberate indifference to a plaintiff's serious needs. *See Moyers v. Buescher*, 806 F. Supp. 218, 220 (E.D. Mo. 1992). "[A] supervisor's liability arises if: 'he directly

participates in a constitutional violation or if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights.'" *Tlamka*, 244 F.3d at 635 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (citations omitted)).

To succeed in showing a failure to train or supervise, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews*, 98 F.3d at 1078. Furthermore, to maintain an action for training or supervisory liability, the plaintiff must show that the failure to train or supervise caused the injury. *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir. 2011).

### a. September 2023 Incident: Assault by GP Inmate Bell

Plaintiff fails to allege that any deliberately indifferent failure to train, supervise, direct, or control the actions of a subordinate, led to his injuries in the September 2023 altercation with Bell. Although Plaintiff states that there was a new CO on duty on the day of the incident, there was no action, or inaction, by this new CO that resulted in Plaintiff's injuries. As discussed above, the September 2023 incident did not result from the new CO letting the wrong inmate out of his cell for recreation time. The incident occurred after Bell broke out of his cell with the help of another inmate. As such, the assault did not result from Brock's failure to supervise or train the new CO. Furthermore, there are no allegations that Brock had notice that the current training procedures and supervision were inadequate and likely to result in a constitutional violation. *See Andrews*, 98 F.3d at 1078. Overall, the facts asserted do no indicate the Brock was deliberately indifferent to, or tacitly authorized, any offending acts. There was no failure to train or supervise by Brock that caused Plaintiff's injuries in the September 2023 altercation with Bell. As such, Plaintiff fails to state a § 1983 supervisory liability claim against Brock, regarding this incident.

b. **March 2024 Incident: Assault by former cellmate Foster**

Likewise, Plaintiff fails to allege that any deliberately indifferent failure to train, supervise, direct, or control the actions of a subordinate, led to his injuries in the March 2024 altercation with Foster. Plaintiff does not state who the "offending employee" was who allowed him to be on recreation time with Foster on the day of the incident. Plaintiff admits that CO Moton kept Foster and Plaintiff separated from December 2023 until this March 2024 incident. This suggests no failure to properly train as to CO Moton. In addition, there are no allegations that Brock had notice that any current training procedure or supervision was inadequate and likely to result in a constitutional violation. *See Andrews*, 98 F.3d at 1078. Overall, the facts asserted do no indicate the Brock was deliberately indifferent to, or tacitly authorized, any offending acts. There was no failure to train or supervise by Brock that caused Plaintiff's injuries in the March 2024 altercation with Foster. As such, Plaintiff fails to state a § 1983 supervisory liability claim against Brock regarding this incident.

IV. **Due Process Violation from April 2023 Transfer to Administrative Segregation**

Prisoners may claim the protections of the Due Process Clause and may not be deprived of life, liberty, or property without due process of law. *Haines v. Kerner,* 404 U.S. 519 (1972). However, a procedural due process claim "is cognizable only if there is a recognized liberty or property interest at stake," and courts "need reach the question of what process is due only if the inmates establish a constitutionally protected liberty interest." *Beaulieu v. Ludeman,* 690 F.3d 1017, 1047 (8th Cir. 2012) (internal citations omitted).

The Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 4 72, 484 (1995); *see also Phillips v. Norris,* 320 F.3d 844, 846-47 (8th Cir. 2003). Therefore, the Court only needs

to reach the question of what process was due if a plaintiff's allegations demonstrate that his placement in disciplinary segregation, administrative segregation, and/or his temporary visitation or payment restrictions created an atypical and significant hardship under *Sandin*. *See Beaulieu,* 690 F.3d at 1047.

In this case, Plaintiff asserts that his six-day stay in administrative segregation in April 2023 was a due process violation. *See* ECF No. 7 at 4 (Plaintiff was moved to "4B Admin Seg unit [or] 'the hole'" on April 7th and moved out on April 13th). Plaintiff alleges no facts tending to show that the conditions of that confinement imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Placement in disciplinary segregation does not, in and of itself, amount to an atypical and significant hardship. *See Portley-El v. Brill,* 288 F.3d 1063, 1065 (8th Cir. 2002) (recognizing that the Eighth Circuit has consistently held that disciplinary segregation is not an atypical and significant hardship under *Sandin).* Also, Plaintiff cannot demonstrate that six days in disciplinary segregation was unduly long. *See Orr v. Larkins,* 610 F.3d 1032, 1033-34 (8th Cir. 2010) (nine months in disciplinary segregation was not atypical and significant); *Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (unpublished) (four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation not atypical or significant); *Kennedy v. Blankenship,* 100 F.3d 640, 641-42 (8th Cir. 1996) (thirty days in punitive isolation was not atypical and significant).

Therefore, Plaintiff's allegations that Brock violated his due process rights when he placed him in administrative segregation for six days fails to state a claim. As such, this final legal claim brought against defendant Steve Brock in his individual capacity is also dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's claims against defendant Steve Brock are **DISMISSED without prejudice**.  28 U.S.C. § 1915(e)(2)(B).  The Clerk shall **not** issue process or cause process to issue upon the Amended Complaint.

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this January 23, 2025.

                                              _____
                                              JOHN A. ROSS
                                              UNITED STATES DISTRICT JUDGE